## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Villa Bellini Ristorante & Lounge, Inc. | Case No: 8-19-bk-06943 |
| Debtor, | |
| _____/ | |
| Villa Bellini Ristorante & Lounge, Inc. | |
| Plaintiff, | |
| v. | Adv Pro. |
| Ciro Mancini | |
| Defendant, | |
| _____/ | |

## COMPLAINT TO RECOVER MONEY OR PROPERTY

Villa Bellini Ristorante & Lounge, Inc. ("VBRL" or the "Debtor"), by and through its undersigned counsel, hereby sues Ciro Mancini ("Mancini") and states:

1. Debtor is a Florida corporation that filed a petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code on July 24, 2019. The Debtor remains in control of its assets and management of its affairs as a debtor in possession.

2. Defendant, Mancini, is an individual residing in Pasco county, Florida.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 157.

4. This Court is the appropriate venue for this proceeding pursuant to 28 U.S.C. 1409

5. This adversary proceeding is initiated under Bankruptcy Rule 7001(1), and the relief requested herein may be ordered pursuant to Section 105(a) of the Bankruptcy Code.

6. All conditions precedent to bringing this proceeding have been performed, waived or have occurred.

7. Debtor has engaged the undersigned counsel to represent it in this proceeding and is obligated, subject to the bankruptcy code and rules, to pay undersigned counsel a reasonable fee for legal services rendered.

### Facts

8. The Debtor was formed in July 2014 to operate an upscale Italian restaurant known as "Villa Bellini," located at 2930 Gulf-to-Bay Blvd., Clearwater, FL. At its inception, the Debtor had three (3) shareholders, Vincent Addonisio ("Mr. Addonisio"), Marco Marzocca Cuni, and Mancini. A fourth shareholder, Russell Quaglia, joined prior to the restaurant actually opening. Mr. Addonisio, Mr. Cuni and Mr. Quaglia each paid the appropriate amount for their stock shares in the Debtor, but Mancini did not pay anything for his shares.

9. At the outset, Mancini served as Executive Chef and general manager of "Villa Bellini." Mancini was given these positions because he represented that he was an experienced chef and restaurant manager. As a result, Mancini was placed in charge of the entire restaurant operation. None of the other shareholders had experience in operating restaurants, and so the shareholders relied heavily on Mancini's claimed acumen in restaurant operations.

10. As the Executive Chef and the general manager, Mancini agreed to be paid a monthly salary of $10,000, less payroll tax withholdings. Mancini's salary could not be changed without the consent of all of the Debtor's shareholders.

11. As general manager of the Debtor, Mancini exclusively controlled the daily operations of the restaurant and its bank accounts. Additionally, Mancini was the signatory on the Debtor's bank accounts, and was given a corporate credit card. Mancini had a duty to use the

Debtor's funds and the credit card only for legitimate business expenses related to the operations of the Debtor and its restaurant.

12. Unbeknownst to the Debtor and its shareholders, Mancini used his position with the Debtor to obtain other corporate credit cards in the name of "Villa Bellini" that Mancini improperly used for personal expenditures and benefits. This was the beginning of Mancini's misappropriation of over $350,000 of the Debtor's money and credit for his own personal gain.

13. Mancini misappropriated money from the Debtor in a variety of ways. First, Mancini repeatedly raised his salary without the knowledge or approval of the shareholders[1]. Mancini unilaterally raised his salary as follows: (i) in December 2014, from $120,000 per year to $130,000; (ii) in June 2015, from $130,000 per year to $156,000; (iii) in April 2016, from $156,000 to $180,000. None of these raises were known to or authorized by the Debtor's shareholders as required. Mancini misappropriated at least $60,000 by taking unauthorized raises.

14. Second, Mancini repeatedly wrote unauthorized checks to himself from the Debtor's bank accounts. The checks had no legitimate purpose and were used as a means to embezzle money from the Debtor. Mancini misappropriated at least $110,000 by writing unauthorized checks to himself.

15. Third, Mancini repeatedly used his signature authority on the Debtor's bank accounts to pay his and his wife's personal credit cards on which they had charged personal expenses. Personal expenses of Mancini and his wife that were paid through this part of the scheme included cosmetic dentistry; veterinary bills, a bail bond, designer clothing and luxury items, travel

---

[1] As stated above, Mancini agreed that his salary could not be raised without the consent of all shareholders and despite this agreement and being consciously aware that he was forbidden from raising his salary, Mancini raised his salary three times over two years anyway.

costs, and maintenance, repair, and insurance for Mancini's two BMW's. Mancini misappropriated at least $150,000 of Debtor's funds for personal expenses.

16. Fourth, Mancini falsely misrepresented to Debtor's bookkeeper that he voided or held his paychecks in order to receive a "replacement" check. Once Mancini would receive the "replacement" check, he would often cash both the original and the "replacement" check. As a result, Mancini would get paid two times for a single pay period. Mancini's misappropriations arising from his receipt of multiple payments for a single pay period exceed over $30,000.

17. Finally, Mancini, on April 25 2016, misappropriated over $27,000 of Debtor's funds when he wired $22,173 from the Debtor's Bank of America bank account to a title company to use as a down payment in conjunction with the purchase of a $750,000 house purchased by Mancini and his wife. Additionally, Mancini used $5,000.00 of the debtor's money to pay his legal fees for the house purchase and closing.

18. Once the Debtor's other shareholders got wind of what Mancini was doing, the Debtor's outside accountant and bookkeeper repeatedly requested that Mancini provide information to establish the claimed legitimacy of the suspicious expenses. Mancini, knowing he misappropriated Debtor's funds, either refused to provide any receipts to the Debtor's accountants or shareholders. After some back and forth between the two sides, Mancini admitted to his wrongdoing. On September 27, 2016, a week after Mancini admitted to misappropriating over $350,000, Debtor terminated Mancini's employment as Executive chef and general manager. After being terminated by the Debtor, Mancini provided the Debtor with copies of personal credit card account statements which he knowingly and intentionally paid for using Debtor's funds.

19. In the two years that Mancini was the Executive Chef and general manager of the Debtor, Mancini misappropriated over $350,000 of the Debtor's funds. As of the date of the

Complaint, almost **three years** after being terminated by Debtor, Mancini has not repaid Debtor any of the over $500,000 that he stole from the Debtor.

## COUNT I
## Breaches of Fiduciary Duties

20. Plaintiff repeats and realleges every allegation in paragraphs 1-19 above.

21. At all material times from the start of Mancini's employment with the Debtor until September 17, 2016 when Mancini was terminated, a fiduciary relationship existed between the Debtor and Mancini arising from his multiple representations to the Debtor and its shareholders that (a) he was experienced, skilled and effective both as a chef and a general manager of Italian restaurants and (b) he could open and operate the "Villa Bellini" restaurant in a profitable manner.

22. Because of the fiduciary relationship that existed between the Debtor and Mancini, he had duties to (a) safeguard the property and assets of the Debtor; (b) use his best efforts to make the Debtor profitable; (c) use the Debtor's monies in a careful and prudent fashion; and (d) exercise the authority given to him by Villa Bellini in a responsible manner and always in the best interest of the Debtor.

23. Mancini breached his fiduciary duties to the Debtor by intentionally, willfully and maliciously misappropriating property and monies belonging to the Debtor in various ways by (a) giving himself large and unauthorized increases in salary; (b) writing checks to himself from the Debtor's accounts, checks unrelated to legitimate expenses or services benefiting Villa Bellini; (c) using the Debtor's monies to pay his and Mrs. Mancini's credit card bills for personal purchases and expenses which did not benefit the Debtor; (d) paying himself (or arranging to have himself paid) for multiples of his agreed-upon salary for a single pay period; and (e) using the Debtor monies to purchase a house.

24. As a direct and approximate result of Mancini's breaches of his fiduciary duty to the Debtor, it has sustained damages in an amount to be proven at trial.

25. The Debtor's damages that resulted from Mancini's acts were aggravated by his conduct, because he had actual knowledge of the wrongfulness of his actions and of the high probability of damage/losses to the Debtor that would result. Despite such knowledge, Mancini intentionally pursued his course of conduct resulting in significant harm to the Debtor.

**WHEREFORE**, Plaintiff demands (a) judgment against Mancini for compensatory damages and prejudgment interest; (b) an order of the Court imposing constructive trusts on the tangible goods purchased by Mancini with the monies misappropriated from the Debtor and on any monies in Mancini's possession which can be traced to the monies stolen from the Debtor; and (c) such other relief as the Court may deem proper.

## COUNT II
### Fraud

26. Plaintiff repeats and realleges every allegation in paragraphs 1-19 above.

27. Mancini made false representations of fact to Villa Bellini, including stating that (a) Mancini would use the "Villa Bellini" credit card only for legitimate business expenses related to the operation of the "Villa Bellini" restaurant; (b) Mancini would use the Debtor's monies in its bank accounts only for legitimate business expenses related to the operation of the "Villa Bellini" restaurant; and (c) Mancini's use of the Debtor's funds to pay credit card purchases by Mancini and Mrs. Mancini were legitimate business-related "food costs" or "other" expenses.

28. Mancini knew that his representations to the Debtor were false when he made them and he intended that the Debtor rely on them.

6

29. Mancini deliberately schemed to cover up his misappropriations, using various methods to hide his activities, including moving monies among the Debtor's accounts.

30. The facts mispresented by Mancini were important and material to the Debtor because, if it had known the truth, it would have acted differently, including withdrawing its authorization for Mancini to use a corporate credit card and terminating his access to the corporate bank accounts.

31. The Debtor justifiably relied on, and did rely on, Mancini's misrepresentations.

32. The Debtor suffered damages because it relied on Mancini's misrepresentations. Villa Bellini's damages because of Mancini's fraudulent representations now are believed to exceed $350,000.

33. Mancini's misrepresentations were the proximate cause of injury to Villa Bellini.

34. The Debtor's damages that resulted from Mancini's misrepresentations were aggravated by his conduct because he had actual knowledge of the wrongfulness of his actions and of the high probability of damage/losses to Villa Bellini that would result. Despite such knowledge, Mancini intentionally pursued his course of conduct resulting in significant harm to Villa Bellini.

**WHEREFORE**, Plaintiff demands (a) judgment against Mancini for compensatory damages and prejudgment interest and (b) such other relief as the Court may deem proper.

### COUNT III
### Conversion

35. Plaintiff repeats and realleges every allegation in paragraphs 1-34 above.

36. Mancini took the Debtor's property without authorization. Specifically, Mancini (a) took in excess of $60,000 by giving himself unauthorized increases in salary, (b) took in excess of

$110,000 by writing himself checks on "Villa Bellini" accounts, (c) took in excess of $155,000 by using the Debtor's funds to pay for his and for Mrs. Mancini's personal purchases, (d) took at least $27,173.58 to purchase a house, and (e) took in excess of $30,000 by intentionally receiving two paychecks over a single pay period.

37. Mancini also used the Debtor's property in an unauthorized manner. Specifically, he wrongfully used the Debtor's corporate credit cards to purchase personal items for himself and for Mrs. Mancini.

38. Mancini has wrongfully retained the Debtor's monies and property that he converted to his and to Mrs. Mancini's use.

39. The Debtor is entitled to possession of the monies misappropriated by Mancini and to possession of the goods purchased by him and by Mrs. Mancini using the Debtor's money.

40. Mancini has admitted that he wrongfully converted certain of the Debtor's property. Specifically, he has admitted that certain credit card purchases by Mancini and by Mrs. Mancini, the charges for which purchases were paid by Mancini from the Debtor's accounts, in fact were personal purchases and were not related to legitimate the Debtor's business. Mancini has offered to repay for some of the personal purchases but he has never actually done so.

41. Mancini has not returned to the Debtor its money and property that he wrongfully converted. Any additional demand that he return such money and property would be futile because Mancini now denies that he converted the Debtor's money and property.

42. The Debtor's damages that resulted from Mancini's conversions were aggravated by his conduct because he had actual knowledge of the wrongfulness of his actions and of the high probability of damage/losses to the Debtor that would result. Despite such knowledge, Mancini intentionally pursued his course of conduct resulting in significant harm to the Debtor.

**WHEREFORE**, Plaintiff requests an order of Court requiring Mancini to return the Debtor's money and property converted by him and demands (a) judgment against Mancini for compensatory damages and prejudgment interest as to all the Debtor's money and property not returned by him and (b) such other relief as the Court may deem proper.

### COUNT IV
### Unjust Enrichment

43. Plaintiff repeats and realleges every allegation in paragraphs 1-42 above.

44. As a result of Mancini's misappropriations of the Debtor's monies as described in paragraphs 16-25, above, Mancini has been unjustly enriched in an amount in excess of $350,000, while the Debtor has been unjustly damaged in that same amount.

45. It would be inequitable for Mancini to retain the benefits wrongfully acquired by him from Debtor without him paying it fair value for such benefits.

**WHEREFORE**, Plaintiff demands (a) judgment against Mancini for compensatory damages and prejudgment interest and (b) such other relief as the Court may deem proper.

**DATED** this 12th day of August 2019.

/s/ *Michael P. Brundage*
Michael P. Brundage
Florida Bar No. 611621
mpbrundagelaw@gmail.com
Brundage Law, P.A.
100 Main Street, Suite 204
Safety Harbor, FL 34695
Telephone: (727) 250-2488
Proposed Attorney for Debtor